IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| **THE NETWORK EFFECT, LLC**<br><br>   1113 Brower Blvd.<br>   Ocean, New Jersey  07712<br><br>**Plaintiff,**<br><br>          v.<br><br>**KATHERINE G. FEENEY**<br>**P/K/A KATIE FEENEY**<br><br>   18220 Wickham Road<br>   Olney, Maryland  20832<br><br>**Defendant.** | Case No.:  22-cv-3251 |

## COMPLAINT

Plaintiff The Network Effect, LLC ("The Network Effect"), by and through its undersigned attorneys, alleges the following in support of its cause of action against Defendant Katherine G. Feeney, p/k/a Katie Feeney ("Feeney"):

## NATURE OF THE CASE

1.  Feeney retained The Network Effect to provide personal talent management services related to developing her career in the entertainment business, and more specifically as a social media influencer.  Despite The Network Effect having plucked Feeney from relative obscurity, and coupled with The Network Effect's diligent and successful efforts to develop and guide Feeney's career, Feeney, without warning or cause, prematurely terminated the parties' Personal Talent Management Agreement (the "Agreement") in violation of the Agreement's terms.

Further, and also in breach of her obligations under the Agreement, Feeney has refused to pay The Network Effect commissions Feeney owes under the terms of the Agreement.

2. Feeney's breach and disclaimer of her contractual obligations have caused and will continue to cause The Network Effect substantial harm in the form of unpaid and lost commissions.

3. The Network Effect brings this lawsuit to vindicate its rights under the Agreement.

## THE PARTIES

4. The Network Effect is a New Jersey limited liability company with its principal place of business in Ocean Township, New Jersey. The Network Effect manages talent and specifically excels in digital marketing for short-form internet content, such as TikTok, Instagram Reels, Snapchat, and Youtube Shorts. Both members of The Network Effect are individual residents of the State of New Jersey.

5. Feeney resides in Olney, Montgomery County, Maryland. She is a college student, social media influencer, and social media correspondent for the Prince George's County-based Washington Commanders football team.

## JURISDICTION & VENUE

6. This Court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

7. This Court has personal jurisdiction over Defendant because she is a resident of Maryland.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is a resident of this judicial district.

## FACTUAL BACKGROUND

9. In February 2021, Feeney executed a Personal Talent Management Agreement with The Network Effect (the "Agreement").

10. Under the Agreement, Feeney retained The Network Effect as her "sole and exclusive personal manager(s), representative(s) and advisor(s) in the development and enhancement of [Feeney's] artistic and professional career in all areas of business during the Term."

11. The Term of the Agreement was "24 months commencing on the date hereof, with [The Network Effect's] option to extend the Term for 1 additional year. At the conclusion of the Term, [Feeney] and [The Network Effect] to mutually discuss and agree on any additional terms."

12. During the Term, The Network Effect agreed to:

render such services as are usually performed by [Feeney's] personal manager including, but not limited to, assistance in strategic career planning, growth strategies, branding/narrative, scheduling, content planning, and development of materials surrounding promotion. [The Network Effect] will also represent [Feeney] and act as [Feeney's] negotiator specific to exploitation in all areas of business. [The Network Effect] will also be available at reasonable times and places to confer with [Feeney] in connection with all matters concerning [Feeney's] professional career, business interests, employment and publicity. [Feeney] agrees that they will not engage any other agent, representative or manager to render any services contemplated under this Agreement and will not negotiate, accept, or execute any agreement or undertaking concerning their career as [Feeney] during the Term without [The Network Effect's] review and consent.

13. In return for these services, the Agreement provides that The Network Effect:

shall receive a commission of a sum equal to Twenty (20%) percent of gross income ("Managers' Commission") with respect to any and all revenue earned, engagements, contracts, and agreements contemplated hereunder, related to [Feeney's] career in all areas of business, entered into or negotiated during the Term, or any subsequent Terms. [Feeney] likewise agrees to pay [The Network Effect] following the expiration of this Agreement with respect to any and all engagements, contracts and agreements or extensions or amendments entered into during the Term. Gross income on business shall include without limitation, salaries, earnings, fees, advances, royalties, bonuses, shares of profit, shares of

stock, partnerships interests, percentages, affiliate fees, livestreaming revenue, advertising revenue on [Feeney] content.

14. The Agreement further provided that The Network Effect:

shall be entitled to receive Managers' Commissions on any and all gross revenue to be paid by Snapchat to [Feeney], whether or not actually paid prior to, or during, the Term. In addition, [Feeney] and [The Network Effect] are in mutual agreement that, regarding other specific instances of gross revenues payable to [Feeney], [The Network Effect] shall be entitled to receive Managers' Commissions on such gross income earned by [Feeney] as specifically set forth, and in accordance with, Appendix A attached hereto, again, with respect to those sources of gross income.

Appendix A to the Agreement lists a number of revenue sources and outlines the circumstances under which Feeney was not required to pay The Network Effect a commission based on her gross income from such revenues.

15. The Agreement requires that Feeney notify The Network Effect immediately when she receives income and pay the Managers' Commission "no fewer than 7 business days after receipt of gross earnings over $1,000."

16. The Agreement is dated "as of January 1, 2021."

17. Feeney executed the Agreement on February 1, 2021.

18. The Network Effect developed Feeney's career for nearly two years, deploying a strategy and tactics crafted to increase Feeney's social media exposure and earnings. The Network Effect's strategy worked. Feeney's earning capacity increased over that period with the final option year being the target for a true breakout in popularity and earnings.

19. On November 18, 2022, Feeney, through counsel, notified The Network Effect that she was terminating the Agreement, "effective immediately." The communication from counsel purporting to effect termination of the Agreement claimed that The Network Effect had failed to provide her with sufficient opportunities and had unspecified "conflicts of interest." Feeney refused to pay any further commissions as required by the Agreement.

4

20. Feeney's vague and ambiguous claims regarding The Network Effect's services are meritless. The Network Effect provided the services required under the Agreement.

21. For example, in 2021 and 2022, The Network Effect planned, scheduled, and developed strategy for Feeney's countless marketing opportunities and provided valuable content strategy advice. The Network Effect's strategy clearly succeeded, as evidenced by Feeney's growth in popularity and revenue generation.

22. Until just before she improperly and prematurely terminated the Agreement, Feeney expressed no dissatisfaction with the services The Network Effect provided to her. On the contrary, as recently as a September 2022 in-person meeting, Feeney expressed how pleased she was with The Network Effect's services and how excited she was for the future prospects those efforts had generated.

23. During the first two years under the Agreement, Feeney earned millions in gross income, entitling The Network Effect to significant commissions.

24. Feeney continues to earn gross income that is covered by the Agreement. Contrary to the Agreement, however, Feeney has ceased alerting The Network Effect when she receives gross income, and she has ceased paying the Managers' Commission.

25. Feeney also has continued to use the shared email account created under the Agreement, which bears a domain name identifying The Network Effect. Feeney has used this email account to field and respond to inquiries, thereby continuing to benefit from the Agreement she has ostensibly terminated and capitalizing on The Network Effect's reputation and infrastructure.

26. For example, immediately prior to Feeney's breach of the Agreement, Feeney was presented with a six-figure offer to promote Canon, which Feeney accepted <u>after</u> terminating the

Agreement. The Network Effect will be entitled to a commission for this campaign once Feeney receives payment, assuming she has not already received it.

27. Feeney also is projected to earn substantial revenue during the balance of 2022 by promoting products during the holiday shopping season, all of which was earned during the term of the Agreement. Under the Agreement, The Network Effect will be entitled to commissions on these earnings, as well.

28. Finally, based on 2021 and 2022 data, Feeney's improper early termination of the Agreement is reasonably anticipated to result in over $400,000.00 in lost commissions for The Network Effect in 2023.

## COUNT ONE

### Breach of Contract

29. Plaintiff incorporates and repeats the allegations of Paragraphs 1-28 herein.

30. The Network Effect and Feeney were parties to a valid, enforceable contract, the Agreement.

31. The Network Effect performed under the Agreement by providing the services to Feeney described therein.

32. Under the Agreement, Feeney was and is obligated to pay commissions to The Network Effect for the Agreement's Term of 24 months, with an option for The Network Effect to extend the Term for an additional year.

33. Without warning or cause, on November 18, 2022, Feeney terminated the Agreement prior to the Term ending.

34. Feeney's early termination is a material breach of the Agreement.

35. In further breach of her obligations, Feeney has refused to pay The Network Effect commissions earned under the Agreement, and commissions owed for the third year of the Agreement.

36. Through her actions, Feeney has damaged The Network Effect in amounts exceeding $75,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment in its favor and against Defendant, as follows:

a. holding that Defendant is liable to Plaintiff for fair and reasonable compensatory damages and costs in an amount to be proved at trial;

b. awarding pre-judgment and post-judgment interest on all damages awarded;

c. awarding any and all other relief the Court deems just and proper.


Dated: December 16, 2022               Respectfully submitted,


                              _____/s/_____
                              Michael B. MacWilliams (Bar No. 23442)
                              Elizabeth C. Rinehart (Bar No. 19638)
                              Venable LLP
                              750 E. Pratt Street
                              Suite 900
                              Baltimore, Maryland 21202
                              Tel: (410) 244-7400
                              Fax: (410) 244-7742
                              MBMacWilliams@Venable.com
                              LCRinehart@Venable.com

                              *Attorneys for Plaintiff*